IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


WALLACE VANLANDINGHAM                                                          PLAINTIFF

vs.                                              No. 04-1083

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                        DEFENDANT


**MEMORANDUM OPINION**

Wallace Vanlandingham (hereinafter "Plaintiff"), has appealed the final decision of the

Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his

claim for a period of disability and disability insurance benefits (hereinafter "DIB") pursuant to §§

216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i)* and

*423*.

Plaintiff alleges that he is disabled by virtue of fibromyalgia, producing "extreme fatigue,

pain and stiffness, sleep disturbance, and some confusion." (Doc. #5, p. 1)

Plaintiff filed his application for benefits with a protective filing date of June 20, 2001. (T.

108-10) The applications were denied originally and upon reconsideration. A hearing before an

ALJ was conducted on December 18, 2002. (T. 59, 75)

Following the hearing, the ALJ issued a decision awarding Plaintiff benefits effective

August 1, 1998. (T. 55-61) On June 6, 2003, the Appeals Council vacated and remanded the

hearing decision finding that the record is insufficient to establish a diagnosis of fibromyalgia. The

ALJ was instructed, upon remand, to develop the record further, to include "obtaining records and

medical source statements from the claimant's treating physician, as well as obtaining a

consultative examination." The ALJ was further instructed to "further address and clarify the extent of the claimant's limitations and obtain vocational expert testimony ..." (T. 95-90)

Upon remand, the ALJ referred Plaintiff to Dr. C. Dwayne Daniels, an orthopedist. (Doc. #254-57) Further, a second hearing was conducted on February 18, 2004. (Doc. #17-33)

By written decision dated June 5, 2004, the ALJ changed his position and found that: Plaintiff met the disability insured status requirements of the Act through 2003; he has not engaged in substantial gainful employment since March 10, 1998; he has a history of benign prostate hypertrophy and musculoskeletal discomfort, but does not have an impairment or combination of impairments which meet or equal the criteria of any of the impairments listed in *Appendix 1, Subpart P, Regulations No. 4* (the "Listings"); Plaintiff's "testimony was credible to the extent it supports a finding his residual functional capacity is for medium work"; Plaintiff's "past relevant work as a forklift operator did not require the performance of work related activities precluded by the above limitations"; Plaintiff's "impairment does not prevent him from performing his past relevant work"; and, utilizing the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was not under disability at any time through the date of the decision. (T. 14)

The Appeals Council declined to review this decision. (T. 4-6) Subsequently, Plaintiff filed this action.

Both parties have filed appeal briefs and this case is now ready for decision.

**Discussion:**

Consideration of a social security disability claim involves a five step evaluation process. *20 C.F.R. § 404.1520 (DIB)*. As noted above, the ALJ found that although Plaintiff's impairments are severe, they do not meet or equal a listed impairment. *20 C.F.R. § 404.1520(d) (DIB)*. At step four of the sequential evaluation process, the ALJ concluded that Plaintiff retains the residual

functional capacity to perform his past relevant work. *20 C.F.R. § 404.1520(e)(DIB).* Accordingly, Plaintiff was found not disabled.

This court's review function is extremely limited. The court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision, taking into account whatever in the record fairly detracts from its weight. *42 U.S.C. § 405(g); Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989); *see also, Baugus v. Secretary of Health and Human Services*, 717 F.2d 443, 445 (8th Cir. 1983); *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir. 1983). The court must accept the agency's factual determinations and reasonable inferences drawn from them, if the record provides substantial evidence to support the findings and inferences. *Russell v. Secretary of H.E.W.*, 540 F.2d 353, 355 (8th Cir. 1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

There is a distinction between "substantial evidence" and "substantial evidence on the record as a whole."

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and applying a balancing test to evidence which is contradictory.

*Wilson v. Sullivan*, 886 F.2d at 175.

Accordingly, this court's review is limited and is deferential to the agency. *See Ostronski v. Chater*, 94 F.3d 413, 415 (8th Cir. 1996). Although the administrative decision must be affirmed if substantial evidence in the record as a whole supports it, *Id.,* the court may not "merely parse the record for substantial evidence supporting the [Commissioner's] decision," but must also

"consider evidence in the record that detracts from the weight of the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8thth Cir. 1992). The court must apply a balancing test to evidence which is contradictory. *Wilson v. Sullivan*, 886 F.2d at 175.

Plaintiff was 56 years of age at the time of the administrative hearing. (T. 23) He has a tenth grade education. (T. 23) His past relevant work is as a fork lift operator at a saw mill. (T. 133)

Plaintiff testified that after a couple of days of work, the muscles all over his body become sore, primarily in his hips and shoulders and he becomes fatigued. (T. 24, 27) He further stated that, periodically, he has difficulty focusing mentally which causes him to forget where he is. He stated that he has difficulty judging distance. (T. 25-26) Plaintiff testified that lifting over 20 pounds or squatting or kneeling aggravates the pain. (T. 28) He professed an inability to lift, repetitively, day after day, 20 pounds. (T. 28)

At the hearing, Plaintiff described his regular activities as including: a daily nap (T. 29) and feeding his dogs. (T. 29) He stated that he engaged in deer hunting (T. 30) utilizing a deer stand that is ten feet off of the ground. (T. 30) In a "disability supplemental interview outline," Plaintiff noted that he is able to: do laundry, dishes, change sheets, takes out the trash, drive, attend church, watch television, listen to the radio and read. (T. 141-42) He stated that on an average day he: does small chores around the house, walks approximately 3/10ths of a mile, eats, rests, reads and watches television. (T. 144)

As pertinent to the issue before the court, the medical record reveals the following. On August 31, 2000, Plaintiff was treated at the Ouachita County Medical Center complaining of blurred vision. (T. 172) He was followed by Don Howard, M.D. beginning on June 7, 2001. Dr. Howard examined Plaintiff on: June 7, 2001; June 14, 2001; August 15, 2001; October 10, 2001;

November 7, 2001; January 10, 2002; March 7, 2002; July 9, 2002; August 8, 2002; August 19, 2002; and, December 9, 2002. (T. 199-215, 228-38)   Typically, the notes with respect to Dr. Howard's examinations of Plaintiff record symptoms and history of musculoskeletal and joint pain and stiffness "all over."  On June 18, 2001, August 15, 2001, November 7, 2001and January 10, 2002, Dr. Howard noted a normal physical examination. (T. 202-07)  Among Dr. Howard's diagnoses was fibromyalgia.  Plaintiff was treated with prescriptions for Vioxx and Bextra. (T. 207, 210, 236)

Following the vacating of the ALJ's decision by the Appeals Council, Dr. Howard wrote a letter to Plaintiff's attorney stating that "... there is no particular test for fibromyalgia available at this time." (T. 258)  Plaintiff was referred to Dr. C. Dwayne Daniels, an orthopedist. Dr. Daniels submitted a report dated November 12, 2003. (T. 254-57)  He noted, in reviewing Dr. Howard's records, that he did "not see any diagnostic work up in Dr. Howard's notes indicating how he arrived at a diagnosis of fibromyalgia other than by history.  Dr. Daniels noted that "on multiple clinic visits to Dr. Howard [Plaintiff's] musculoskeletal exam was noted to be normal. Dr. Daniel's found no abnormalities in Plaintiff's range of motion in the spine and upper and lower extremities.  The doctor concluded that Plaintiff could frequently lift and/or carry up to 20 pounds; occasionally lift/carry up to 100 pounds; and, frequently use his hands, feet and arms for grasping, fine manipulation, handling objects, feeling objects, reaching, and pushing, pulling and operating controls.  Further, Plaintiff was found to have the capacity to sit, stand, and walk for up to eight hours per day. (T.256-57)

The ALJ found that Dr. Howard reported no particular findings or diagnostic criteria in support of his diagnosis of fibromyalgia and the ALJ noted the findings of Dr. Daniels. (T. 13)
 The ALJ found, purporting to utilize the criteria of *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.

1984), Plaintiff's subjective complaints to be credible to the extent they support a finding that he

has the residual functional capacity to perform work at the medium level of exertion. (T. 13-14)

Plaintiff asserts the following two claims: Plaintiff does suffer from fibromyalgia; and, the

ALJ conducted an improper evaluation as to credibility and pain. (Doc. #5, p. 4)

Fibromyalgia is a group of common nonarticular disorders characterized by achy pain,

tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissue structures.

See *The Merck Manual, p. 481-482 (17th Ed. 1999)*. Its cause or causes are unknown, there is no

cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective.

There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms

are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates

between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18

fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them

to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient who really has

fibromyalgia to flinch. Some people may have such a severe case of fibromyalgia as to be totally

disabled from working, but most do not. *Michael Doherty & Adrian Jones, "Fibromyalgia*

*Syndrome (ABC of Rheumatology)", 310 British Med.J. 386 (1995)*. The question is whether the

Plaintiff is one of the minority, or not.

Fibromyalgia[1] has been described by the United States Court of Appeals for the Eighth

Circuit as exhibiting symptoms such as "sleep deprivation, fatigue, and pain." *Forehand v.*

*Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004). The diagnosis of fibromyalgia "'is usually made

afer eliminating other conditions, as there are no confirming diagnostic tests.'" *Id.* (quoting

---

[1]Fibromyalgia is also referred to as myofascial pain syndrome, fibrositis and fibromyositis. *The Merck Manual,* p. 481 (17th Ed.1999).

*Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1 (8th Cir. 2003)) Further, it is true that "the opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583589 (8th Cir. 1998)

Nevertheless, the record clearly reveals that Dr. Howard, the only physician who has reached the diagnosis of fibromyalgia, reports no diagnostic testing of Plaintiff nor did the doctor make an effort to "eliminate other conditions" as possibly responsible for Plaintiff's symptoms prior to concluding that he suffers from fibromyalgia. Indeed, Dr. Howard's diagnosis appears to have resulted from an unqualified acceptance of Plaintiff's subjective complaints. Further Dr. Howard has not expressed an opinion as to Plaintiff's residual functional capacity, and instead states only that Plaintiff is "disabled and unable to do any qualified employment." (T. 199) The consulting orthopedist, Dr. Daniels commented upon the lack of "particular findings or diagnostic criteria in support of" Dr. Howard's diagnosis of fibromyalgia (T. 113) and this was noted by the ALJ. (T. 13)

While normally "[a] one-time evaluation by a non-treating" physician is not entitled to controlling weight, *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998), where, as here the consultant engages in an extensive review of the claimant's medical records and has provided a specific assessment of the claimant's medical condition, deference is afforded to such a consulting physician's report over the treating physician's conclusory opinions. *Cf. Anderson v. Barnhart*, 244 F.3d 809, 813 (8th Cir. 2003); *Ward v. Heckler*, 786 F.2d 844, 846-47 (8th Cir. 1986)(per curiam)(holding that a treating physician's conclusory opinions warranted less deference than "detailed and thorough" reports of consulting physicians); *Cox v. Barnhart*, 345 F.3d 606, 607 (8th Cir. 2003)("[C]onclusory statements by a doctor, if unsupported by the medical record, do not bind the ALJ in his disability determination"); *Cruze v. Chater*, 85 F.3d 1320, 1324-25 (8th Cir.

1996)(ALJ can properly discount physician's statement that claimant can not engage in employment); *Sampson v. Apfel*, 165 F.3d 616, 618-19 (8th Cir. 1999)(ALJ not required to adopt the opinion of a physician as to ultimate issue of the ability of a claimant to engage in gainful employment).

Even if it were accepted that Plaintiff suffers from fibromyalgia, more is required into for an entitlement to benefits to be established. Fibromyalgia is not per se disabling. *See Forehand v. Barnhart*, 364 F.3d at 987 ("Fibromyalgia has *the potential* to be disabling")(emphasis supplied). If Plaintiff retains the residual functional capacity to perform past relevant work, he can not be found to be disabled. *20 C.F.R. § 404.1520(e)(DIB).*

In reaching his conclusions, the ALJ found Plaintiff's testimony to be "credible to the extent it supports a finding his residual functional capacity is for medium work." (T. 14) In evaluating Plaintiff's subjective complaints, the ALJ made reference to *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). (T. 12)

The law on this issue is clear. Under *Polaski*, "an ALJ must look at five factors when determining the credibility of a claimant's subjective allegations of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Harris v. Shalala*, 45 F.3d at 1193; *see also Baker v. Sec. of HHS*, 955 F.2d 552, 555 (8th Cir. 1992). Further, in evaluating these factors, the ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler*, 783 F.2d 128, 131 (8th Cir. 1986)(citing *Polaski v. Heckler*, 751 F.2d 943, 948-50 (8th Cir. 1984)). To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could

discount the testimony for lack of credibility. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

Additionally, the decision as to a social security claimant's credibility is primarily a matter for the ALJ to decide, not the court. *See Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001).

The ALJ made reference to Plaintiff's statement that he did not quit work due to his physical condition but in order to care for an ill parent. (T. 13, 147) Plaintiff testified at the hearing and noted in filings with the Social Security Administration that his daily activities include: walking "a couple days a week" (T. 26, 29); deer hunting with his sons using a deer stand (T. 30); feeding his dogs (T. 29); and, doing laundry, dishes, changing sheets, taking out the trash, driving, attending church, watching television, listening to the radio and reading. (T. 141-42) He stated that on an average day he: does small chores around the house, walks approximately 3/10ths of a mile, eats, rests, reads and watches television. (T. 144)

In addition to considering the history of Plaintiff's medical treatment and daily activities, the ALJ also discussed and considered: the duration, frequency and intensity of the pain; aggravating and precipitating factors; Plaintiff's medication; and, functional restrictions.

In short, it is found that a proper *Polaski* analysis was conducted and we cannot say that the ALJ's conclusions are not supported by substantial evidence. The ALJ may discredit subjective complaints which are inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

In this case, the ALJ adequately discussed Plaintiff's testimony and the other evidence as to each of these factors and we conclude that his conclusions are supported by substantial evidence

from the record as a whole.

We conclude that the ALJ did an adequate job of considering Plaintiff's subjective complaints of disabling pain and limitation, and that the decision not to credit Plaintiff's complaints is substantially supported by the record. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996)(ALJ entitled to discount claimant's complaints of pain based upon claimant's failure to pursue regular medical treatment and where complaints were inconsistent with objective medical evidence); *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996)("The ALJ may discount the claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence."). Even where it is "possible to draw two inconsistent positions from the evidence [if] one of those positions represents the agency's findings," the court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992). The ALJ also properly focused on the impact of Plaintiff's pain on his activities rather than upon the general effects of Plaintiff's pain. *Trenary v. Bowen*, 898 F.2d 1361, 1365 (8th Cir. 1990); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001)("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

**Conclusion:**

From the foregoing we conclude that the ALJ's decision in this case is supported by substantial evidence in the record as a whole.[2] Accordingly, we find that the Commissioner's decision should be affirmed and Plaintiff's complaint dismissed with prejudice. A judgment

---

[2]It is noted that the testimony of the vocational expert was presented in the first hearing conducted on December 18, 2002, and was not presented at the second hearing. The transcript of the December 18, 2002 hearing is not included in the record before the court. A VE was present at the second hearing (not the same VE as testified at the first hearing) and the second VE asked at the second hearing whether his testimony was different from that presented by the VE at the first hearing and He indicated the affirmative. (T. 49) Although the transcript of the first hearing is not contained in the record, Plaintiff raised no issue with respect to the VE testimony.

incorporating these findings will be entered pursuant to *F.R.C.P. 52* and *58*.

DATED this 30th day of August 2005.

/s/ Bobby E. Shepherd
HON. BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE